UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

SALAHUDDIN F. SMART,

    Plaintiff,

v.

QUEEN ANNE'S COUNTY,
WARDEN LAMONTE E. COOKE and
CHIEF OF SECURITY
MILTON S. GREENWOOD, JR.,

    Defendants.

Civil Action No. TDC-17-3671

## MEMORANDUM OPINION

Plaintiff Salahuddin F. Smart was a pre-trial detainee at the Queen Anne's County Detention Center ("QACDC") in Centreville, Maryland when he filed this action pursuant to 42 U.S.C. § 1983 against Defendants Queen Anne's County, Maryland ("QAC"); QACDC Warden Lamonte Cooke; and QACDC Chief of Security Milton Greenwood. Pending before the Court are Defendants' unopposed Motion to Dismiss or for Summary Judgment and Defendants' Motion to Strike the Amended Complaint. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Strike the Amended Complaint and the Motion to Dismiss or for Summary Judgment will be GRANTED.

## BACKGROUND

Smart, who is presently incarcerated at the Camden County Detention Center in New Jersey, was detained at QACDC on a traffic violation. On December 12, 2017, Smart filed a

Complaint on his own behalf and for fellow inmate Lamar Burgess, Sr. seeking to pursue a class action alleging that Defendants improperly restricted inmate receipt of incoming mail, specifically, that QACDC barred the receipt of greeting cards, family photographs, and certain other printed materials in violation of the First Amendment right to freedom of association, the Eighth Amendment right against cruel and unusual punishment, the Fourth Amendment right against unlawful detention and seizure, and the Fourteenth Amendment right to equal protection of the law. Burgess did not sign the Complaint.

On September 5, 2018, Defendants filed a Motion to Dismiss or for Summary Judgment. Smart filed no memorandum in opposition to the Motion, nor did he request additional time to respond. On December 26, 2018, Smart filed a complaint, without a case number, that was docketed as an amended complaint in this case filed without leave of the Court. After QAC filed a Motion to Strike this filing, the Court concluded that the filing asserted separate claims and thus docketed it as a complaint in a new case. The Court nevertheless granted Smart leave to file an amended complaint by February 15, 2019. On February 25, 2019, ten days after the extended time for filing the Amended Complaint had expired, Smart filed a request for additional time to file an amended complaint. On March 5, 2019, the Court issued an Order extending the time for Smart to file an amended complaint until March 26, 2019. The Court received the Amended Complaint on April 4, 2019. The submission was postmarked March 29, 2019, and Smart had dated the document March 21, 2019.

## DISCUSSION

As a threshold matter, the Court finds that Smart, who presumably is not an attorney, may not represent the interests of another individual. D. Md. Local R. 101.1(a) (stating that individual parties may represent only themselves, not other parties). Nor may Smart bring a class action on

behalf of other detainees or inmates. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (stating that a *pro se* prisoner unassisted by counsel cannot represent fellow inmates in a class action). Thus, the Court construes the Complaint as asserted by Smart only and as an individual claim, not a class action.

In the Motion to Strike the Amended Complaint, Defendants argue that the Court should strike the Amended Complaint because it was filed outside the March 26, 2019 deadline. Defendants' Motion to Dismiss or for Summary Judgment seeks dismissal or summary judgment on several grounds: (1) QAC is entitled to dismissal because it is not an entity amenable to suit; (2) Defendants are entitled to qualified immunity against Smart's claims; and (3) Smart has failed to state a claim of constitutional violations arising from the QACDC policy of barring inmates from receiving greeting cards, photographs, and certain other printed materials.

## I. Motion to Strike the Amended Complaint

In this Motion, Defendants argue that Smart's Amended Complaint should be stricken as untimely. Where the Amended Complaint was postmarked on March 29, 2019 and received on April 4, 2019, it appears to have been filed after the March 26, 2019 deadline. Under the "prison mailbox rule," a pleading is deemed filed as of the date that it was placed in the prison mail system. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Although Smart listed, on the Amended Complaint, a date of March 21, 2019, he does not actually assert, and provides no evidence, that he placed the Amended Complaint in the prison mail system on or before March 26, 2019. For example, he provides no proof of a mailing date, prison trust fund records, receipt for postage, or his own declaration. *See Roberts v. McKenzie*, Civ. No. AW-12-2474, 2013 WL 3179102, at *4 (D. Md. June 20, 2013) ("When a court does not receive a pleading within a reasonable time after the date upon which an inmate claims to have mailed it, it is appropriate to require independent

proof of the mailing date such as mail logs . . . or receipts for postage before giving the inmate the benefit of the prison mailbox rule."), *aff'd*, 566 F. App'x 226 (4th Cir. 2014). Thus, the Court finds he is not entitled to the benefit of this rule. Accordingly, on the current record, the Court may strike the Amended Complaint as untimely.

Although the Court could allow Smart an opportunity to come forward with proof of the date of mailing, it need not do so because the Court finds that the Amended Complaint is properly stricken for other reasons. First, a review of the allegations reveals that Counts 4-6 largely restate the allegations in the original Complaint about the prison's policy of not permitting inmates to receive certain kinds of mail and do not add any material facts. The new allegations, which assert claims of First Amendment retaliation for the filing of prison grievances in the form of a transfer to another detention facility, and an Eighth Amendment claim relating to allegedly inadequate medical care, track the claims made in ECF No. 23, which was docketed as the original complaint in a new case, No. TDC-18-4023, that has since been dismissed. Where the Court had already concluded that these claims constituted a separate case that has been separately resolved, *see* ECF No. 33, it was not proper to seek to assert them again in this case.

Finally, the Court finds that the Amended Complaint fails to provide sufficient facts to state a plausible claim for relief on these new causes of action. Although courts "should freely give leave" to amend, an amendment should not be accepted if it would be futile, such as when the amendment would be subject to dismissal for failure to state a claim. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018). On the First Amendment claim, "the First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGrow*, 202 F.3d 676, 685

4

(4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). An inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017).

In the Amended Complaint, although Smart claims that he was transferred to another prison in retaliation for filing a prison grievance, he does not identify the grievance to which he is referring. Where he claims that he was transferred in November 2017, he cannot be referring to his Complaint filed in this case, which was first filed on December 12, 2017. Since Smart has not identified the specific prison grievance he filed, and he has not provided the date or time frame when he filed it to allow for an assessment of whether it was proximate in time to the alleged retaliatory action, he has not stated sufficient facts to support a plausible claim that his transfer was causally connected to the grievance. *See Constantine*, 411 F.3d at 499.

Likewise, Smart has not alleged sufficient facts to support his Eighth Amendment claim for deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This standard requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's

serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted).

Where Smart has simply claimed a lack of medical treatment for an unspecified sexually transmitted disease, without providing facts showing that the medical need was objectively serious, specifying the duration of any period without medical care, and setting forth facts supporting a finding that the medical provider had actual knowledge of a substantial risk to Smart's health and safety, he has not met the pleading requirements of Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that to state a plausible claim for relief, a complaint must allege facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Where this claim is unrelated to the subject of the original Complaint, any attempt to reassert it should be made in a separate action.

For all of these reasons, the Motion to Strike the Amended Complaint will be granted. The Court will therefore consider the Defendants' Motion to Dismiss or for Summary Judgment as to the original Complaint.

## II. Motion to Dismiss or for Summary Judgment

### A. Legal Standards

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. A claim is plausible

when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (internal citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See*

*Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Smart has neither raised such concerns nor provided the requisite affidavit or declaration. Accordingly, the Court will construe Defendants' Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Qualified Immunity

In the Complaint, Smart alleges that QACDC's policy of prohibiting inmates from receiving greeting cards, photographs, and other categories of printed material violates their First Amendment right to freedom of association because it unnecessarily and improperly hinders their interactions with others. In particular, Smart asserts that this policy prevents inmates from receiving photographs of and cards from their children. In his case, Smart expresses that he is deeply hurt and upset that he cannot see photographs of his five children. He also argues that the policy's bar on receipt of newspapers and magazine clippings, computer printouts, and inmate-to-inmate correspondence burdens his First Amendment rights. Smart further contends that because

this policy differs from that of other prisons and detention facilities in Maryland, it violates his right to equal protection of the law. He does not specify how this policy violates the Fourth Amendment or the Eighth Amendment. As to the specific Defendants, Smart asserts that Warden Cooke and Greenwood are liable for failing to train and supervise correctional staff to comply with "freedom of association" and other constitutional rights by allowing access to such materials, or to properly search mail without violating constitutional rights. Compl. 4, ECF No. 1.

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although the First Amendment protects prisoners in their sending and receiving of mail, restrictions on the mail are permitted if they are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987); *United States. v. Stotts*, 925 F.2d 83, 85-86 (4th Cir. 1991). In considering whether a restriction is so related, courts consider (1) whether the regulation is related to a legitimate and neutral governmental objective; (2) whether there are alternatives that remain open to inmates to exercise the right; (3) the impact that accommodating the asserted right will have on guards and other prisoners, and on the allocation of prison resources; and (4) whether the existence of an easy and obvious alternative shows that the regulation is an exaggerated response by prison officials. *Turner*, 482 U.S. at 89-90. A higher level of scrutiny is appropriate for incoming mail, as compared to outgoing mail. *See Thornburgh*, 490 U.S. at 413.

According to Warden Cooke, the restriction on greeting cards is based on QACDC's need to control incoming contraband because greeting cards may contain contraband secreted into the card stock and, in the past, greetings cards were used to send contraband to detainees. As to photographs, Cooke asserts that photographs are banned because detainees used toothpaste to affix them to their cell walls and thus caused damage to the facility's walls. No explanation is offered for the remaining restrictions.

The United States Supreme Court has upheld a prison's ban on inmate-to-inmate communications. *See Turner*, 482 U.S. at 93. Where the Warden has asserted that the need to prevent the entry of contraband as the justification for the ban on greeting cards, the restriction may be constitutional. Courts have upheld similar restrictions for comparable security reasons. *See Lee v. Maryland Div. of Corr.*, No. CCB-16-439, 2017 WL 713760, at *5 (D. Md. Feb. 22, 2017) (upholding a ban on all incoming greeting cards where it was discovered that the cards were used to smuggle drugs into prisons); *cf. Barnes v. Wilson*, 110 F. Supp. 3d 624, 632 (D. Md. 2015) (holding that a policy restricting incoming mail to postcards only did not violate the Constitution where it related to the detention center's security concerns); *Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1153-54 (D. Ariz. 2009) (finding no constitutional violation where a policy limiting incoming mail to postcards only was rationally related to a legitimate governmental interest to prevent or limit smuggling of contraband). Although not specifically articulated by Defendants, the ban on newspaper and magazine clippings may be based on a similar rationale. The facts that QACDC detainees have other means of communication with family members and, unlike inmates in a state prison, generally have stays at QACDC of limited duration, render the limitations more justifiable. *See Turner*, 482 U.S. at 90; *Barnes* 110 F. Supp. 3d at 632.

The proffered justification for barring photographs, however, is entirely unrelated to prison security and relates only to an interest in maintaining the physical plant of the detention facility. In *Prison Legal News v. Lehman*, 397 F.3d 692, 699-700 (9th Cir. 2005), the court held that regulations prohibiting prisoners from receiving non-subscription bulk mail and catalogs were not rationally related to a legitimate penological interest, where the proffered justifications were that such a ban would reduce mail volume so as to increase the likelihood of intercepting contraband, increase the efficiency of cell searches, reduce fire hazards in cells, and reduce the workload of employees sorting inmate mail. *Id.* at 699-700, 703. Thus, where the justification relates more to conserving prison resources, such as decreasing the workload of staff, than to providing prison security and order, the penological interest is more difficult to discern. *See id.; see also Human Rights Def. Ctr. v. Sw. Virginia Reg'l Jail Auth.*, No. 1:18CV00013, 2019 WL 2375492, *1, *7, *11 (W.D. Va. June 5, 2019) (finding that a complete ban on magazines to prevent staples from entering jails was not rationally related to penological interests in security, preventing employees from being overwhelmed by paper overaccumulation, and reducing fire hazards, where simply removing the periodicals' staples took no more time than the confiscation process and only a relatively small number of inmates received the magazines). Where Smart has articulated an associational interest in receiving photographs—maintaining relationships with one's children—and there has been no showing that the likely minimal damage to cell walls from the placement of photographs upon them cannot be addressed by less restrictive means, there is a serious question whether a blanket ban on all photographs is reasonably related to a legitimate penological interest. Additional evidence on that issue, as well as the bans on newspaper and magazine clippings and computer printouts, would likely be needed in order to rule on the constitutionality of these restrictions.

Here, however, regardless of whether Smart could establish that the QACDC ban on photographs violates the First Amendment, the Court finds that Defendants are entitled to qualified immunity on all claims. When qualified immunity is asserted, the court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right, and (2) "whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir. 2007). For qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See Henry*, 501 F.3d at 377. Courts may address the questions in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In determining if a right is "clearly established," the Court considers whether "the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates that right" and was thus "on notice" that the conduct violated established law. *E.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018). This standard is met by controlling authority or a robust consensus of cases of persuasive authority that places the constitutionality of the officer's conduct beyond debate. *See Booker*, 855 F.3d at 539.

In assessing this question, the Court must identify a case where an official, "acting under similar circumstances[,]" was held to have violated the First Amendment. *See White*, 137 S. Ct. 548, 552 (2017); *Safar v. Tingle*, 859 F.3d 241, 246 (4th Cir. 2017). Although the facts of such a case need not be "identical" to the present facts, *Safar*, 859 F.3d at 248, it should be "obvious" that the case applies to the facts. *White*, 137 S. Ct. at 552. In assessing this question, the court "first examines 'cases of controlling authority in [this] jurisdiction,'" here, the Supreme Court, Fourth Circuit, and the Court of Appeals of Maryland. *Booker*, 855 F.3d at 538 (quoting *Amaechi v. West*,

237 F.3d 356, 363 (4th Cir. 2001)). If that authority is not dispositive, the Court may still consider "'a consensus of cases of persuasive authority' from other jurisdictions" as a basis to find that conduct was barred by clearly established law. *Id.* at 539 (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). When considering whether there is such a "consensus," a court considers not only the broad holdings of those cases but also the specific requirements adopted by each court. *See Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004).

Here, Smart has identified no controlling authority, or weight of persuasive authority, that would support a conclusion that it was clearly established, at the time of Smart's detention at QACDC in November 2017, that a prison or jail's blanket ban on incoming greeting cards, photographs, media clippings, or computer printouts violates the First Amendment right to freedom of association, the Fourteenth Amendment right to equal protection of the law, the Eighth Amendment right against cruel and unusual punishment, or any other constitutional right. The Court similarly has not found case law from the Supreme Court or the United States Courts of Appeals invalidating such policies. Even if *Prison Legal News* could be deemed sufficiently analogous to support a conclusion that total bans on photographs, newspaper and magazine clippings, and computer printouts are not rationally related to legitimate penological objectives, *see Prison Legal News*, 397 F.3d at 703, a single case from a different circuit is insufficient to support a finding that it was clearly established at the relevant time that such bans were unconstitutional. *See Booker*, 855 F.3d at 539; *Prison Legal News*, 297 F.3d at 703 (finding the ban on bulk mail unconstitutional but granting qualified immunity to prison officials because they did not violate clearly established law). Thus, although the Court has significant reservations whether the ban on photographs is reasonably related to a legitimate penological objective, such that QACDC should consider reexamining that policy, the Court finds that Defendants are entitled

13

to qualified immunity on Smart's claims and will grant the Motion on that basis. Accordingly, the Court need not address and resolve Defendants' remaining arguments.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike the Amended Complaint and Defendants' Motion to Dismiss or for Summary Judgment will be GRANTED. A separate Order shall issue.

Date: September 16, 2019

THEODORE D. CHUANG
United States District Judge